The opinion of the Court was delivered by
Withers, J.
The grounds of appeal present no complaint of the law laid down to the jury, but it is urged to this Court that there was either no evidence to support the verdict, or so little and that so equivocal, as to warrant this Court in directing another investigation.
It is hard to lay down any useful or practical rule as a guide, where the ground is such as that above-stated in regard to the quantum of evidence. If there be none to support the verdict, of course it must go back ex debito justicia,. That which is slight to one mind may be strong to another. It may be, indeed, that this Court, if acting as a jury, might resolve a set of circumstances otherwise than the lawful arbiters of facts may have done. It is precisely that degree of liberal discretion which must be lodged in the tribunal of last resort, necessary to the ends of justice by the consent of all sound writers, reinforced by the experience of the profession, which most embarrasses this tribunal. We have subjected the facts reported in this case to a review, and are constrained to the conclusion, that there is no sufficient ground to say, the verdict rendered is without evidence, or that the evidence is so insufficient and inconclusive as to render the jury liable to the charge of caprice.
Two days before Mosely signed the note sued on, professedly *54 as agent of Mrs. Cochran, (then White,) a paper was executed by Mosely, which seems to have been intended for execution by Mrs. White, which shows that she advanced a certain sum of money to Mosely to use in a traffic in negroes. But this does not exclude the idea that he was to be confined to that sum, and to deal by purchasing for cash only in all cases. The profits expected from that sum were intended mainly, if not wholly, for the benefit of Mrs. Mosely. It was in evidence that Mosely had an interview with Mrs. White about the purchase of Sophy, for whom (and a horse) the note sued on was given, and she consented to the purchase of the negro ; that he, Mosely, assured the plaintiff he was authorized to bind Mrs. White by the note ; that Cochran pursued Mosely to Mississippi, having first procured the note from the plaintiff for collection, leaving a copy and receipt, and promising the plaintiff that if he found the negro Sophy, and the horse, in M.osely!s possession, he would pay the note ; if not, it should be returned ; that he did, in fact, get Sophy and the horse from Mosely; that the amount of the note was charged against Mosely in a settlement with him, which became thus a credit to Cochran on the account which Mosely rendered for his agency for Mrs. Cochran. It further appeared, that in such accounting between Cochran and Mosely, the “capital” which the latter was charged with having received from Mrs. Cochran was stated to be $11,543; which sum was beyond the cash aggregate which it appeared Mosely and his wife had received from Mrs. White (now Cochran).
We cannot say that these facts might not authorize a jury to conclude that so much of this “capital” as consisted in the purchase money of Sophy, or, in other words, as arose from the note given to the plaintiff, was recognized as having been advanced by Mrs. Cochran, dum sola.
It was argued, however, as matter arising on the report of this case, that this was not sufficient to support the idea of a ratification by these defendants — that what Cochran did could not implicate his wife. It is enough to say, that it was not so held on the circuit. In order to guard the jury against that position assumed for the plaintiff, they were instructed that the *55 acts of Cochran could not reflect back so as to infuse any new force into an act of his wife while sole, or to fix on her a liability, as originating then, which she had not assumed — or become, in other words, a cause of action against them both. But that this species of evidence might be taken for what it was worth, upon the inquiry whether Mrs. White authorized Mosely to sign the note in her name.
We do not perceive any good ground to gainsay this. It may not be very cogent proof — but that is not the test. It was the least effect it could have, and must be allowed that much, to bear in that direction, or to have no bearing at all. It could not be excluded from the case, for it was in without objection.
Suppose Williams had applied to Cochran, at his house, and the day after his marriage, for payment of this note, and he had said, “ I am ignorant of the transaction; I will inquire of my wife;” — and on consulting her, had forthwith said, “It is all right — -the note shall be paid — surely this would have been pertinent and competent evidence for Williams in an action on the note. Yet, it is of the same grade .(perhaps would be of greater force) as that derived on the trial from Cochran’s acts. If'obnoxious to objection, it would seem to be on a ground that would neutralize anything that could be done pending the claim against Cochran and wife, upon a contract' alleged to be made <fawn sola. She could make no admission, in his absence, that would bind him ; but she could, in his presence, he assenting, expressly or impliedly. She could not do the former, because the-liability was his — he was bound to pay her debts. Yet they could have confessed judgment, it is presumed, in this very case. She could not be made to pay the judgment during coverture ; certainly not unless she had a separate estate, and probably then only in a Court of Equity. Cochran could release a note due to her, or he might recognize one due by her, or pay it. The difference is great between the admissions of the wife and those of the husband, where the question is, as to her debt contracted dmn sola. In the choses for or against her, his is the legal interest when action is brought. She might collude, or be en *56 trapped, to defraud him as to debts due or debts owing on her account. She is not sui juris, but he is. It seems unreasonable to affirm that the wife must be made a party to a record, and yet that no admission of the cause of action by her, with the knowledge and concurrence of her husband, shall be heard, if not to establish the plaintiff’s right, at least to advance his cause. The legal disability visited on her as to independent acts or admissions, is quite necessary to protect the husband— and though the judgment obtained against both might survive against her, if the husband does not pay it, (or take the benefit of the insolvent debtor’s law, which would work her final discharge as well as his, Lockwood vs. Salter, 5 B. & Ad. 303 ; 27 Eng. C. L. R. 82,) though pending the action if the husband die, it may proceed to judgment against the wife — though in such case, it may be, his admissions would not be evidence against her, being sole defendant — yet this does not come up to this case, where the husband’s admissions, or acts, are tendered against himself and wife, joint defendants, on the trial of the cause against them. If husband and wife be joint plaintiffs on a cause of action accruing to the wife while discovert, and the defendant offer a discount, cannot the husband admit it and the wife be bound to accept a judgment rendered for the residue 7 and this, though it 'be conceded, that if by the death of the husband she should become sole plaintiff, she may repudiate his admissions which have not been yet ratified by a judgment 7
These considerations tend to show that Cochran’s acts or admissions, if strong enough to import so much, might conclude the wife while they remain joint defendants. But however that may be, they reconcile us to the opinion that the force and effect which was allowed to them on the circuit operated no legal wrong to the appellants.
Wherefore it is adjudged, that the motion be dismissed.
O’Neall, Wardlaw, Frost, Whitner and Glover, JX, concurred.

Motion dismissed.